**UNITED PARCEL SERVICE, INC., Appellant,**

**v.**

**CORPORATION COMMISSION OF OKLAHOMA and the State of Oklahoma, Appellees.**

**No. 51583.**

Court of Appeals of Oklahoma, Division No. 1.

June 26, 1979.

Rehearing Denied July 31, 1979.

Certiorari Denied Sept. 17, 1979.

Released for Publication by Order of Court of Appeals July 31, 1979.

James D. Fellers, Oklahoma City, George P. Williams, III, Philadelphia, Pa., for appellant.

Huffman, Arrington, Scheurich & Kihle by John L. Arrington, Jr., Curtis M. Long, Tulsa, for appellees, Missouri, Kansas & Oklahoma Coach Lines, Inc., Oklahoma Trans-Coaches, Inc., KG Lines, Inc., Grey-

hound Lines, Inc. and Continental Trailways, Inc.

Reuben Davis, Tulsa, for appellee, Magic Empire Express.

Max G. Morgan, William L. Anderson, Oklahoma City, for appellees, Mistletoe Express Service, Beaver Express Service, Inc.

REYNOLDS, Judge:

United Parcel Service, Inc. (UPS), filed an application for a Certificate of Public Convenience and Necessity authorizing intrastate operation as a common carrier by motor vehicle, over irregular routes, in the transportation of general commodities of restricted size and weight. Twenty-four separate protests to this application were filed. After considering the record in its entirety, and the briefs and argument of counsel, the Commission denied UPS's application. It also dismissed UPS's application to set aside, amend, and modify the denial order.

UPS's application proposes to extend its existing interstate operation to include the intrastate market. Packages would be picked up by the drivers on a regular service or per call basis for the next-business-day delivery to any point in the State of Oklahoma. Distribution would be accomplished through a central sorting hub which serves the operating centers that service the various zones established within the state. Each package is not to exceed 50 pounds or measure more than 108 inches in length and girth combined.

It is the position of UPS that there are significant deficiencies in the delivery of small packages in this state, that the U. S. Postal Service parcel post is not providing satisfactory service, that existing carriers do not provide a feasible alternative to the parcel post system, that UPS's proposal offers a significant improvement over presently existing services, and that their proposal would not substantially affect the existing carriers in that most of their traffic will come from the dissatisfied parcel post customers.

UPS appeals the Corporation Commission's order denying its application for a Certificate of Public Convenience and Necessity arguing that the Commission's findings are not supported by substantial evidence and are therefore arbitrary and capricious.

UPS, as an applicant for a Certificate of Public Convenience and Necessity as a common carrier by motor vehicle over irregular routes, is confronted with the rigid, specific requirements of Title 47 O.S.1971, § 166, which provides in part as follows:

It is hereby declared unlawful for any common carrier by motor vehicle to operate or furnish service within this State without having obtained from the Commission a certificate declaring that public convenience and necessity require such operation, or for any contract carrier by motor vehicle to operate or furnish service within the State without having obtained a permit from the Commission declaring the operation shall be consistent with the public interest. The Commission shall have power, and it shall be its duty after public hearing, to issue said certificate or permit as prayed for, or to refuse to issue the same, or to issue it for the partial exercise only of said privilege sought within sixty (60) days of final hearing, and may attach to the exercise of the rights granted by such certificate or permit such terms and conditions as in its judgment the public convenience and necessity or public interest may require; *provided that in all cases it will be presumed, in the absence of competent evidence to the contrary, that intrastate common carriers operating under existing certificates are rendering adequate service between the points or within the areas authorized to be served by them,* and the applicant has the burden of proof to show otherwise; and provided further, that the mere filing of an application does not authorize any person to operate as a motor carrier.

In granting applications for certification or permits the Commission shall take into consideration the reliability and financial condition of the applicant and his

sense of responsibility toward the public; the transportation service being maintained by presently existing motor carriers; and any other matters tending to show the need or lack of necessity for granting said application. No permit for any contract carrier by motor vehicle shall be issued without the applicant proving by competent evidence that the transport service proposed under the contract is not such that it could be reasonably furnished by existing carriers, and further, that such permit would not jeopardize the existing common carrier service. (Emphasis added.)

Title 47 O.S.1971, § 161 supplies the following pertinent definitions:

(G) The term "common carrier by motor vehicle" means any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate or interstate commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes.

(H) The term "contract carrier by motor vehicle" means any person which engages in transportation by motor vehicle of passengers or property in interstate or intrastate commerce, for compensation (other than transportation referred to in the preceding paragraph) under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer.

In light of these definitions, § 166 requires an applicant for a Certificate of Public Convenience and Necessity to satisfy two requirements: (1) the applicant must make a showing that public convenience and necessity requires the proposed service, and (2) the applicant must overcome the statutory presumption that the intrastate common carriers operating under existing certificates are rendering adequate service between the points or within the areas authorized to be served by them.[1]

In granting a Certificate of Public Convenience and Necessity, § 166 provides that the Commission shall consider (1) the reliability, financial condition, and sense of responsibility toward the public of the applicant; (2) the present service being maintained; and (3) all other matters tending to show need or lack of need.

The phrase "public convenience and necessity" is not capable of precise definition and necessarily has reference to the facts and circumstances of each case. In *Chicago, R. I. & P. Ry. Co. v. State*, 126 Okl. 48, 258 P. 874 (1927), the Supreme Court established the commonly accepted definition of necessity, holding:

Necessity, as here used, could not mean indispensable which is the more common meaning of the term. While a condition might arise where motor transportation of this sort might be indispensable to an individual or several individuals, such could never be the case with the public. A much less urgency will meet the requirements. As used in this connection, "necessity" means a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure, or both—without which the people generally of the community are denied, to their detriment, that which is enjoyed by other people generally, similarly situated.

This definition was expanded in *Oklahoma Transp. Co. v. State,* 198 Okl. 246, 177 P.2d 93 (1947), wherein the following appears:

Any improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary.

---

1. The necessity of such a statutory presumption is of questionable wisdom, but not a proper subject of judicial review.

It is beyond question that an efficient small package delivery system is "necessary" in the State of Oklahoma. The issue here presented is whether UPS's proposed service is required by public convenience and necessity.

UPS contends that the record demonstrates that its proposed service is unique and that the differences between the two types of service offered are such as to appeal to, attract, and hold different types of small package traffic. UPS maintains that the express carriers are designed to attract the package traffic requiring expedited availability—same day or first thing in the morning delivery.

The Commission found that UPS failed to meet its statutory burden to prove by substantial evidence that public convenience and necessity required the granting of their application. No specific finding was made concerning UPS's fitness, though the Commission noted that UPS was presently serving 48 states including Oklahoma in its interstate operation, and has enjoyed a healthy financial growth in recent years. The Commission expressly found however, that the existing carriers, in combination by interlining, provide a small package express service on a statewide basis that is substantially similar to the service features proposed by UPS. The Commission found that the real difference in the services was that UPS proposed to handle the restricted type of freight that is the most lucrative, leaving the more costly operations to the express carriers.

Section 166 also requires that the applicant for a Certificate of Public Convenience and Necessity must overcome the statutory presumption that the intrastate common carriers operating under existing certificates are rendering adequate service between the points or within the areas authorized to be served by them. The Commission expressly found that UPS had failed to overcome this statutory presumption.

UPS contends that this conclusion of the Commission is wholly unsupportable by the evidence. UPS contends that it is not required to show inadequate service by the existing carrier where the proposed service is of a territorial scope far broader than that offered by the existing carriers which would provide a package service to those people who are presently without such. UPS further contends that the testimony of the witnesses and the admissions of the protestants themselves establish that the express carriers are not capable of providing statewide service and that the service of the express carriers is seriously deficient, or completely nonexistent, at many of the places they are authorized to serve.

The scope of review of this Court of orders issued by the Corporation Commission is set out in Art. IX, § 20, of the Oklahoma Constitution, which provides in part as follows:

> In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine . . . whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

In *Central Okl. Freight Lines, Inc. v. Corporation Commission*, Okl., 484 P.2d 877 (1971), the Supreme Court defined the term "substantial evidence" as follows:

> The term "substantial evidence" means something more than a scintilla of evidence and means evidence that possesses something of substance and of relevant consequence such as carries with it fitness to induce conviction, and is such evidence that reasonable men fairly differ as to whether it establishes a case. The determination of whether there is substantial evidence in support of the Commission's order does not require that the evidence be weighed, but only that the evidence in support of the order be examined to see whether it meets the above test.

In *Cameron v. Corporation Commission*, Okl., 414 P.2d 266 (1966), the Supreme Court described "substantial evidence" as the evidence which:

> . . . [I]mplies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved.

■ Under the limited scope of review, as provided in Art. IX, § 20, of the Oklahoma Constitution, and the definition of substantial evidence supplied by the Oklahoma Supreme Court, this Court is not authorized to substitute its judgment for that of the Commission in determining the comparative weight to be assigned each item of evidence produced by the respective parties, nor to ascertain if the order is in accord with the weight of the evidence.

■ The testimony of the witnesses and the evidence offered was voluminous and thorough, though conflicting. The non-unanimous vote of the Commission is reflective of the fact that reasonable men can fairly differ on the proper conclusion to be drawn from such evidence. Had the Commission granted UPS's application, substantial evidence was present in the record to uphold such an order on appeal. However, in view of the statutory presumption of adequate service (47 O.S.1971, § 166), and there being substantial evidence in the record to support the Commission's ruling, this Court has no choice but to affirm the order of the Corporation Commission.

AFFIRMED.

ROMANG, P. J., and BOX, J., concur.